UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

TIMOTHY WHEELER, ET AL.     *     CIVIL ACTION
                            *
VERSUS                      *     NO. 08-34
                            *
BRANDY CARBER, ET AL.       *     JUDGE FALLON

## ORDER & REASONS

Before the Court is a Motion for Partial Summary Judgment (Rec. Doc. No. 41), filed by Timothy Wheeler, Tracy Wheeler, and Wildcat Investors, LLC, and a Motion for Summary Judgment (Rec. Doc. No. 38), filed by Property Partners, Inc. The Court has reviewed the submitted memoranda and the applicable law. For the following reasons, the Motion for Partial Summary Judgment is granted in part and denied in part, and the Motion for Summary Judgment is denied without prejudice to party's ability to re-urge the motion at a later date, if applicable.

I.      **BACKGROUND**

This case arises out of a series of contracts to purchase and sell condominiums in Baton Rouge, Louisiana, in 2007. Defendant Property Partners, Inc., d/b/a Re/Max ("Re/Max") and one of its agents, Defendant Brandy Carber, facilitated two contracts between Plaintiffs, the Wheelers and Wildcat Investors, LLC ("the Wheelers"), and two related entities, Juban Courts, LLC ("Juban") and The Cottages at Blue Heron Lakes, LLC ("Cottages"), by which the Wheelers would purchase twenty-four condominiums from Juban and Cottages. Although these contracts fulfilled the Wheelers' objectives, they allege that the Defendants induced them to

1

purchase an additional thirty condominiums from Juban and Cottages by promising that the Wheelers would be able to "flip" the additional condominiums to a third party, Worldwide International Investors, LLC ("Worldwide"). When Worldwide did not close on its deal to buy the condominiums from the Wheelers, they were left unable to finance the purchase from Juban. Juban initiated a breach of contract action against the Wheelers in another Middle District suit, *Juban Courts, LLC v. Wheeler, et al.*, now consolidated with this suit.

The Wheelers allege that Defendants Re/Max and Carber were negligent in that they breached the standard of care for real estate agents by failing to fully investigate the viability and credibility to WorldWide, inducing the Wheelers to undertake risks inconsistent with their stated investment objectives, and failing to include appropriate contingencies in the purchase agreements with Juban. Furthermore, the Wheelers allege that Defendants breached duties of care, loyalty, and good faith, which constitute a breach of the contractual obligations to the Wheelers. Finally, the Wheelers allege that they are entitled to indemnification from Defendants in the suit filed against them by Juban.

Defendant Re/Max has answered and denied liability. Defendant Re/Max further asserts that Defendant Brandy Carber was the only individual with whom the Wheelers dealt regarding the condominium sales, and that, because she is an independent contractor, they are not liable for her actions. Ms. Carber has also answered and denied liability. Since filing her answer, Ms. Carber has filed a bankruptcy petition and has therefore been excused from this suit.

## II. PENDING MOTIONS

The parties have now filed two motions. The main contentions are summarized below.

**A. Motion for Partial Summary Judgment, filed by Timothy Wheeler, Tracy Wheeler, and Wildcat Investors, LLC (Rec. Doc. No. 41)**

The Wheelers have filed a Motion for Partial Summary Judgment against Consolidated Plaintiff Juban Courts, LLC. Specifically, the Wheelers seek a judgment deciding two issues raised by the case: First, the Wheelers argue that the damages claimed by Juban are limited to the stipulated damages clause present in each of the contracts at issue. According to the Wheelers, all of the purchase agreements contain a clause that limits Juban's remedies to either five percent of the purchase price or specific performance. The Wheelers note that Juban no longer holds title to the units, thus rendering specific performance impossible. Therefore, the Wheelers contend that Juban should be limited to five percent of the purchase price, or $236,226.20, plus attorneys' fees. Instead, Juban is seeking approximately one million dollars, a figure which includes such elements as lost lease revenue, homeowners' association dues, and escrow costs. According to the Wheelers, the Court should hold that, as a matter of law, Juban is unable to make such claims.

Second, the Wheelers argue that six of the twenty-six agreements at issue, signed on March 28, 2007, are unenforceable. The Wheelers note, and Juban does not contend, that the signature page of six of the contracts are photocopies attached to purchase agreements that detail the six different condominium units to be purchased. The Wheelers do not offer a cohesive theory of how or why these agreements were created in such a way, but instead simply argue that no matter what, a signature on a blank purchase agreement does not create an enforceable contract. As a result, the Wheelers contend, the Court should rule that, as a matter of law, Juban cannot enforce these contracts against them.

Juban has filed an opposition to the Wheelers' motion in which he argues that there remain disputed factual issues concerning the Motion for Partial Summary Judgment. First, Juban argues that it should not be held to the stipulated damages clause in the contracts. According to Juban, the stipulated damages are unreasonably low compared to its actual damages, and should therefore be held to be contrary to public policy under Civil Code article 2012. Juban lists its actual damages as $1,380,541.47, a figure that includes management fees, special upgrades, additional marketing, and brokerage and commissions, among other things. Furthermore, Juban argues that the Wheelers breached the contracts in bad faith, and should therefore be liable for all damages, foreseeable and unforeseeable, under Civil Code article 1997. Finally, Juban argues that if it is held to the stipulated damages clause, several of the additional costs it lists would fall under the catch-all clause that imposes liability on the Wheelers "for the brokerage fees and all attorneys' fees and other costs incurred in the enforcement of any and all rights under" the contracts.

Regarding the Wheelers' assertion that six of the contracts are unenforceable, Juban offers two arguments to the contrary. First, according to Juban, Dr. Wheeler revealed in his deposition testimony that he did not care how many units he was going to purchase, and that the Wheelers relied on their real estate agent, Brandy Carber, to select the units to be purchased before she faxed the signed contracts back to Juban. Juban asserts that the unit details were added after signature not by Juban's representative, but by the Wheelers' representative. As a result, Juban argues, it is irrelevant that the units were not specified at the time Dr. Wheeler signed the contracts on behalf of the Wheelers.

Second, Juban contends that while it appears that the Wheelers' intent was to be

bound by the contracts, if the Wheelers' intent is disputed, it is a factual issue to be determined by a jury. Specifically, Juban argues that two pieces of evidence show Dr. Wheeler's intent to bind W&W in signing the contracts: (1) Dr. Wheeler's attempt to cancel the purchase agreements after signing them, and (2) Dr. Wheeler's attempt to procure financing even after notice that the cancellation was rejected by Juban. Therefore, Juban concludes, because the Wheelers' intent was, at best, unclear, this Court should not grant summary judgment on the issue and should instead allow the issue to be decided by a jury.

**B. Motion for Summary Judgment, filed by Property Partners, Inc. (Rec. Doc. No. 38)**

Defendant Re/Max has filed a Motion for Summary Judgment. In it, the real estate broker company argues that it has no independent liability and cannot be held vicariously liable for the acts of Brandy Carber. First, Re/Max contends that although the Wheelers make no distinction between the actions of Ms. Carber and Re/Max, the Wheelers present no evidence that Re/Max is independently liable to them.

Second, Re/Max asserts Ms. Carber was at all times functioning as an independent contractor in connection with her representations as a real estate agent. Re/Max points out that Ms. Carber fits the description of a real estate agent functioning as an independent contractor under Louisiana Revised Statute 37:1446(H). Furthermore, Re/Max notes that, under Louisiana statutory law, vicarious liability it only applicable to the employer-employee relationship, and it does not apply to an independent contractor relationship. As a result, Re/Max argues, it cannot be held vicariously liable for Ms. Carber's actions in her dealings with the Wheelers.

The Wheelers have filed an opposition to this motion. In it, the Wheelers argue that Re/Max's position ignores the fact that the real estate broker's own acts and omissions have

caused damage to both the Wheelers and Juban. Specifically, the Wheelers assert that Re/Max was negligent in failing to maintain an escrow account for the transactions between the Wheelers and Worldwide, and between the Wheelers and Juban. In addition, the Wheelers contend that questions of fact remain concerning Ms. Carber's role and whether she was performing activities that were part of the function of a real estate broker, rather than an independent agent. Finally, the Wheelers point out that summary judgment is improper at this time, as discovery is not yet completed and Re/Max has not yet been deposed under Federal Rule 30(b)(6).

### III.     LAW & ANALYSIS

A district court can grant a motion for summary judgment only when the "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986). The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir.1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.1995) (citing Fed.R.Civ.P. 56(e); Celotex Corp. v.

Catrett, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. See *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249–50 (internal citations omitted).

**B. Motion for Partial Summary Judgment, filed by Timothy Wheeler, Tracy Wheeler, and Wildcat Investors, LLC (Rec. Doc. No. 41)**

With respect to the Wheeler's motion for partial summary judgment, there are two issues: (1) the six purchase agreements signed March 28, 2007, and (2)the stipulated damages clauses. The Court will address the issues in turn.

**1. March 28, 2007 purchase agreements**

The Wheelers have also moved for summary judgment on the issue of the enforceability of the six contracts signed on March 28, 2007. The Wheelers argue that they signed a blank signature page that was later photocopied and attached to six different purchase agreements. Because there was no specific unit offered by the contract, the Wheelers contend that they could not have accepted an offer, and therefore the six contracts are unenforceable. Juban opposes this motion, arguing it was the Wheelers' real estate agent who filled in the unit details to the contracts, and when Juban received the contracts, they were complete. Furthermore, Juban argues that the Wheelers' intent regarding the contracts is at best unclear and should be determined by a jury.

Louisiana Civil Code states that a contract to sell must set forth the thing and the price and meet the formal requirements of the sale it contemplates. La. Civ. Code art. 2623. "Parties are free to contract for any object that is lawful, possible, and determined or

7

determinable." La. Civ. Code art. 1971. The general rules governing offer and acceptable pertain to contracts to sell. La. Civ. Code art. 2438.

Regarding real property, however, Louisiana law places a heightened requirement on agreements to buy and sell: such contracts must be in writing. Under Louisiana Civil Code article 1839, "a transfer of immoveable property must be made by authentic act or by act under private signature." Oral transfers of real property are only valid when the property has actually been delivered and the seller recognizes the transfer under oath. *Id.* And, as with all contracts in Louisiana, the contract is only complete when all parties agree upon the thing sold, the price, and consent. La. C.C. art. 2456; *see also Hines v. Dance*, 460 So.2d 1152, 1155 (La. App. 2 Cir. 1984).

In the instant case, it is uncontested that when Dr. Wheeler signed the purchase agreement on March 28, 2007, the contract contained no information about the condominiums to be purchased or the price. Furthermore, it is uncontested that this information was later filled into the photocopies of the document signed by Dr. Wheeler, either by Ms. Carber or by a representative of Juban. Because the contract lacked the information necessary -- namely, the specific condominiums and the prices to be paid -- for a valid contract to purchase real property, these six agreements are not enforceable by this Court.

Juban's arguments to the contrary are unavailing. First, Juban argues that it does not matter whether Dr. Wheeler or Ms. Carber filled in the necessary information, but rather it only matters that the contracts were complete when he received them to sign. Even if Dr. Wheeler instructed his agent to fill in the details, this fact does not cure the defect. Under Louisiana Civil Code article 2997, a grant of power to an agent to make a written contract must also be made in

writing. There is no evidence in this case that Dr. Wheeler granted such power to Ms. Carber in writing. Therefore, that the necessary information may have been added by Ms. Carber is irrelevant.

Second, Juban argues that the Wheelers' conduct after signing the contracts reveals their intent to be bound by the agreements. Relying on the precedent set in *Milliman v. Peterman*, 519 So.2d 238 (La. App. 5 Cir. 1988), Juban argues that a written contract is not necessary and, because the Wheelers showed that they intended to be bound by the contracts in question, the agreements were, in effect, ratified.

Juban is misguided in its reliance on *Milliman*. In *Milliman*, the buyers signed a contract to purchase a home that was thereafter left unsigned by the seller. *Id.* at 242. The seller did, however, manifest his assent to the agreement in other ways, including sending a telegram communicating his acceptance of the offer. *Id.* Afterward, the buyers argued that the agreement was invalid, and the court held that a contract existed and was enforceable. *Id.*

By contrast, the buyers in this case, the Wheelers, did not sign a contract. Rather, the Wheelers signed a blank purchase agreement that was then photocopied multiple times and filled in with the relevant information. This is not a case in which the buyers agree to the property and the price, and later attempt to deem the deal invalid; it is instead a case in which the buyers agreed to nothing and are now asking that the contracts been ruled unenforceable. Therefore, the precedent set in *Milliman* is inapplicable to this case.

In sum, when the Wheelers signed the blank purchase agreement on March 28, 2007, the lack of an object and a price to the contract defeats the required writing necessary for a contract to sell real property. Therefore, the six contracts at issue, signed on March 28, 2007,

9

must be deemed unenforceable. Accordingly, the Court grants the Wheeler's motion for partial summary judgment on the issue of the six contracts signed March 28, 2007.

**2. Stipulated damages clause**s

The Wheelers have moved for partial summary judgment regarding the issue of damages. The Wheelers argue that the stipulated damages clause in the remaining enforceable purchase agreements should determine the amount of damages owed to Juban, if any. Juban has filed an opposition, arguing that either the stipulated damages are unreasonably low or the Wheelers breached the contract in bad faith and are therefore liable for unforeseeable damages as well.

Louisiana law allows the inclusion of stipulated damage clauses in contracts. Louisiana Civil Code article 2005 states that "parties may stipulate the damages to be recovered in case of nonperformance, defective performance, or delay in performance of an obligation." The jurisprudence holds that a stipulated damage clause fixes the amount of all damages that may be recovered, and actual damages may not be awarded. *Gremillion's Heirs v. Rapides Parish Police*, 493 So.2d 584 (La.1986); *Rabin v. Blazas*, 537 So.2d 221 (La.App. 4 Cir.1988). However, Louisiana Civil Code article 2012 allows for the modification of stipulated damages when "they are so manifestly unreasonable as to be contrary to public policy." Juban argues that *Plaquemines Parish Government v. River/Road Construction, Inc.*, 828 So.2d 16 (La. App. 4 Cir. 8/28/02), supports its contention that the stipulated damages provided for in its contracts with the Wheelers are unreasonably low.

In this case, the existence of the stipulated damages clauses is uncontested. The question for the Court is whether this clause provides for damages that are so unreasonably low

10

as to be contrary to public policy. The Court finds that they are not. In *Grimsley v. Lenox*. 643 So.2d 203 (La. App. 3 Cir. 1994), a court upheld a stipulated damages clause that provided only $500 to the nonbreaching party, rather than allow the party to collect $15,000 in actual damages. In this case, the difference between stipulated and actual damages is less stark, with stipulated damages equaling nearly 20% of the actual damages alleged by Juban. Furthermore, it seems as though Juban is misguided in its attempts to rely on the *Plaquemines Parish* case, in which a court decided that a stipulated damages clause provided an unreasonably low amount. In that case, the nonbreaching party was the parish government, and in awarding actual damages, the court relied heavily upon the government's interest in enforcing its building permit conditions and in the preservation of its lands. In the instant case, Juban offers no such weighty public policy reason for setting aside the stipulated damages clause. As a result, the stipulated damages clause should not be set aside due to unreasonableness.

Juban also attempts to avoid application of the stipulated damages clause by arguing that the Wheelers breached in bad faith. Under Louisiana Civil Code article 1997, "an obligor in bad faith is liable for all damages, foreseeable or not, that are a direct consequence of his failure to perform." As explained in the comments to article 1997, bad faith is an intentional or malicious failure to perform. La. Civ. Code. art. 1997, cmts (b) and (c). Juban argues that because the Wheelers admitted to ripping up the deposit checks once copies were faxed to Juban, they breached the contracts in bad faith.

Although the Court does not find that the Wheelers necessarily breached the contracts in bad faith, Juban's argument does create a question of fact regarding the application of the stipulated damages clause. The deposition testimony of Dr. Wheeler reveals that he sent

copies of the deposit checks with the intention of ripping them up afterward, rendering them void. This conduct tends to support Juban's contention that the Wheelers breached the contracts intentionally or maliciously, or in bad faith. On the other hand, it is uncontested that the Wheelers attempted to procure financing in order to purchase the units themselves once Worldwide never materialized. This fact tends to support the Wheelers' argument that it did not intend to breach the contracts.

In sum, the issue of whether the Wheelers breached the purchase agreements in bad faith is pregnant with fact, and it central to the issue of the application of the stipulated damages clauses in the remaining contracts. If the Wheelers breached in bad faith, Juban is entitled to all damages, foreseeable and unforeseeable. If the Wheelers did not breach in bad faith, Juban may be limited to the stipulated damages of 5% of purchase price. This issue is a question of fact for a jury to decide, and accordingly, the motion for partial summary judgment on the issue of stipulated damages must be denied.

**B. Motion for Summary Judgment, filed by Property Partners, Inc. (Rec. Doc. No. 38)**

Property Partners, Inc., ("Re/Max") has also filed a Motion for Summary Judgment. In it, Re/Max argues that it has no independent liability for the damages alleged by the Wheelers, and also that it cannot be held vicariously liable for the acts of Brandy Carber. The Wheelers oppose this motion, contending that Re/Max is independently liable for some conduct, including its negligence in failing to maintain escrow accounts.

In addition, both in their brief and at oral argument, the Wheelers noted that discovery with respect to Re/Max is not yet complete, and Re/Max has yet to be deposed. The Court then continued the trial date to allow for completion of discovery. Accordingly, the Court

will deny this motion without prejudice in order to allow parties to complete discovery, and in particular to allow for the deposition of Re/Max. If, after the completion of discovery, Re/Max believes that a motion for summary judgment is still appropriate, it may re-urge the motion at that time.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion for Partial Summary Judgment, filed by Timothy Wheeler, Tracy Wheeler, and Wildcat Investors, LLC, (Rec. Doc. No. 41) is hereby **GRANTED IN PART AND DENIED IN PART**, as set forth above.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment, filed by Property Partners, Inc., (Rec. Doc. No. 38) is hereby **DENIED** without prejudice to the right of the parties to re-urge the motion once discovery has been completed, if necessary.

New Orleans, Louisiana, this 26th day of March, 2012.

_____
UNITED STATES DISTRICT JUDGE